Daisy Sobat and Eileen Sobat     :
    :  No.  1843 C.D. 2015
    v.        :
    :  Argued:  April 11, 2016
The Borough of Midland,    :
A Municipal Corporation;    :
Diane Kemp, Manager of the    :
Borough of Midland and    :
Chad Miller, Building/Sewer    :
Inspector of the Borough of Midland  :
    :
Appeal of:  Eileen Sobat    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY
JUDGE McCULLOUGH            FILED:  June 9, 2016


Eileen Sobat (Sobat) appeals from the August 24, 2015 order of the Court of Common Pleas of Beaver County (trial court) sustaining the preliminary objections in the nature of a demurrer filed by the Borough of Midland (Borough); Diane Kemp (Kemp), the Borough's manager; and Chad Miller (Miller), the Borough's building/sewer inspector, (together, the Borough defendants), resulting in the dismissal of her complaint.  For the reasons that follow, we affirm.

**Facts and Procedural History**

On April 23, 2015, Daisy Sobat and her daughter, Eileen Sobat, (together, the Sobats), filed a Complaint against the Borough defendants for a

single count of negligent misrepresentation. At the time of the pertinent events, Daisy Sobat owned a residence at 1284 Ohio Avenue, Midland, Beaver County, Pennsylvania, where the Sobats have resided since 1967. In October of 2014, the Sobats began to experience sewer problems inside their home "causing improper drainage and/or back up of their sewage lateral line." (Reproduced Record (R.R.) at 7a.) The Sobats hired a plumber, Wayne George (George), to investigate and repair the "sewage lateral draining issue." *Id.* After investigation, George determined that portions of the sewage lateral line inside the residence, as well as its exterior, required replacement due to "age and deterioration." *Id.* George concluded that the sewage lateral presented a danger to the Sobats' health which required immediate attention. George excavated the exterior lateral line for a distance of twenty-five lineal feet, from where the line entered the house to the sidewalk abutting Ohio Avenue (first excavation). At this juncture, George determined that the sewer lateral had reverse flow and that gravity flow from the house would be impossible. (R.R. at 6a-7a.)

George requested permission from Miller to install a sewage grinder pump outside of the residence foundation which "would fully correct" the reverse gravity flow problems. (R.R. at 7a.) Miller left the property for a short while to allegedly consult with Kemp. Upon his return, Miller advised George that "sewer grinder pumps were not permitted in the Borough of Midland by Borough ordinance." (R.R. at 8a.) Miller informed George that "a sewage grinder pump could not be installed," and that George would be required to correct the reverse flow problem. (R.R. at 8a.) Thus, the lateral excavation had to continue from the sidewalk to beyond the middle of Ohio Avenue, where the main line was located. George protested that the additional excavation was unnecessary and costly.

2

Miller advised George again that grinder pumps were not permitted by ordinance, that the same was confirmed by Kemp, and that additional excavation was required. (R.R. at 8a.)

After obtaining a permit to open the street, George performed the additional excavation to the main line, a distance of twenty-five lineal feet (second excavation), and George determined that the main line was three inches too high to obtain gravity flow from the residence. Miller was called to the site again to inspect and review the lateral excavation and the basement elevation of the lateral to the main line. Miller confirmed that positive gravity flow from the residence to the main line would not be possible. Miller left the property for a short while to allegedly consult with Kemp. Upon his return, Miller informed George that a sewage grinder pump could be installed. After obtaining approval of the Borough engineer the following day, George installed the sewage grinder pump and a new sewer line, which was inspected by Miller. (R.R. at 8a-9a.)

In their claim for negligent misrepresentation, the Sobats averred that the Borough defendants "were under a public or other duty to provide true and correct information to the [Sobats] regarding [the] Borough's requirements in repairing or replacing the [Sobats'] sewer service lateral." (R.R. at 11a.) The Sobats alleged that the Borough defendants' representation that grinder pumps were prohibited by ordinance was false and that had correct information been supplied at that time, the Sobats would not have been required to perform the second excavation at great expense. The Sobats sought damages for expenditures incurred to open the street, excavate to the main line, backfill the portion excavated, and repair the asphalt on Ohio Avenue – all of which relate to the second excavation. They averred that the Borough defendants have waived

3

governmental immunity for utility service facilities contained in Section 8542(b)(5) of the Judicial Code, commonly referred to as the Political Subdivision Tort Claims Act (PSTCA), 42 Pa.C.S. §8542(b)(5), "as this matter concerns a dangerous condition of a sewage system owned by the Borough." (R.R. at 9a-13a.)

The Borough defendants filed preliminary objections in the nature of a demurrer to the Sobats' Complaint. The Borough defendants contended that they were entitled to governmental immunity pursuant to the PSTCA, and that the complaint failed to allege facts that would bring the claim within the utility service facilities exception to governmental immunity. They argued that the Sobats did not aver any injury sustained to property or person, which is a threshold requirement for any waiver of immunity. Further, the Borough defendants asserted that the claim did not fall within the utility service facilities exception to immunity because the complaint alleged neither a dangerous condition of the sewer system owned by the Borough nor that the Borough had prior notice of the existence of any dangerous condition.[1]

In opposition to the preliminary objections, the Sobats argued that expenditures were incurred due to the second, unnecessary excavation of the lateral, which did constitute an injury to person or property. The Sobats also contended that a dangerous condition was alleged, i.e., that of the reverse flow creating sewer backup and drainage issues. The Sobats argued that the main line

---

[1] The Borough defendants also contended that the complaint should be dismissed due to the economic loss doctrine. The economic loss doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damages. *Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 985 A.2d 840, 841 n.3 (Pa. 2009).

4

was three inches too high and that a positive gravity flow could never have been achieved at the residence. While not pled, the Sobats countered that the Borough defendants had notice of the reverse flow condition because an occupancy permit must have been issued for the residence, which would have required inspection from a Borough representative. The claim is that an occupancy permit should not have been issued because the three-inch differential at the point of connection would not have passed inspection and, therefore, a negligent inspection must have been performed. This, argued the Sobats, gave the Borough defendants knowledge of the dangerous condition. The Sobats contended that questions of fact existed as to the details of the condition, whether the condition was dangerous, and whether the Borough had notice of the condition, all of which precluded dismissal of the complaint on preliminary objections.

By order dated August 24, 2015, the trial court sustained the Borough defendants' preliminary objections and dismissed the complaint. (R.R. at 88a.) The trial court noted that the complaint does not allege a dangerous condition of the sewer line or how the Borough's sewer line, in and of itself, constituted a dangerous condition. The court determined that the complaint merely alleged the Borough defendants' negligent misrepresentation as to the installation of a grinder pump and that the Sobats' expenses were not caused by a dangerous condition of the sewer line itself. Further, the court concluded that the claim for additional expenses incurred due to the excavation work "[did] not constitute 'damages on account of an injury to a person or property.'" (R.R. at 87a.) Finally, the trial court determined that no allegation was made that the Borough defendants had notice or should be charged with notice of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous

5

condition. Thus, the trial court concluded that the Sobats' claim did not fall under the immunity waiver for utility service facilities and, therefore, was barred by governmental immunity.[2] (R.R. at 83a-88a.)

Eileen Sobat[3] filed the instant appeal[4] and contends that the trial court erred in sustaining the Borough defendants' preliminary objections because she sufficiently alleged: (1) the existence of a dangerous condition of the sewer line; (2) that expenditures for the unnecessary work on the lateral due to the Borough defendants' insistence is an "injury or damage" allowing recovery for the Borough's negligent misrepresentation; and (3) that the condition of the sewage

---

[2] The court resolved the preliminary objections on the inapplicability of the utility service facilities exception; therefore, the court did not reach the Borough defendants' alternative argument that Sobat's claim was barred by the economic loss doctrine. The economic loss doctrine is not raised in this appeal.

[3] Daisy Sobat did not appeal the trial court's order.

[4] When ruling on whether preliminary objections in the nature of a demurrer were properly sustained, our standard of review is *de novo* and the scope of review is plenary. *Gale v. City of Philadelphia*, 86 A.3d 318, 319 n.1 (Pa. Cmwlth. 2014). This Court has previously held that:

> We may affirm the granting of preliminary objections only when it is clear and free from doubt that, based on the facts pled, the plaintiff will be unable to prove facts legally sufficient to establish a right to relief. In evaluating the legal sufficiency of the challenged pleading, we accept as true all well-pled, material, and relevant facts alleged and every inference that is fairly deducible therefrom.

*Gibellino v. Manchester Township,* 109 A.3d 336, 343 (Pa. Cmwlth. 2015) (quoting *Gale*, 86 A.3d at 319 n.2). The trial court's decision will be reversed only where there is an error of law or an abuse of discretion. *Le-Nature's, Inc. v. Latrobe Municipal Authority*, 913 A.2d 988, 991 n.3 (Pa. Cmwlth. 2006).

lateral as it attached to the main line of the Borough sewage system is sufficient to establish a reasonably foreseeable risk of injury of which the Borough defendants had actual or constructive knowledge.

Further, Sobat asserts that the trial court erred and violated her procedural due process rights by permitting the Borough defendants to file preliminary objections and a brief in excess of page limitations set forth by local rule.[5] Sobat contends that the Borough defendants did not establish "cause shown" as required by the rule. Sobat argues that the noncompliance with the rule should warrant a sanction.

In response, the Borough defendants maintain that the trial court did not err in sustaining their preliminary objections and dismissing the complaint because Sobat's claim is barred by governmental immunity. The Borough defendants contend that Sobat failed to plead damages resulting from injury to person or property as required to overcome governmental immunity pursuant to 42 Pa.C.S. §8542(a). Further, the Borough defendants argue that Sobat's negligent misrepresentation claim cannot proceed under the utility service facilities exception to immunity because she failed to plead the existence of a dangerous

---

[5] Beaver County Local Rule 1028(c), entitled "Procedures for Disposition of Preliminary Objections," provides:

> Except as otherwise permitted by Order of Court for cause shown or by agreement of the parties by filed stipulation, Preliminary Objections shall not exceed five (5) pages in length and supporting briefs as well as briefs in opposition shall not exceed ten pages in length.

7

condition of a sanitary sewer facility owned by the Borough and that the Borough defendants had prior notice of the alleged dangerous condition.[6]

## Discussion

Pursuant to sections 8541 and 8542 of the PSTCA, a local agency is immune from liability for damages on account of an injury to a person or property caused by its own acts or the acts of its employees unless the injury falls into one of the enumerated exceptions to governmental immunity. 42 Pa.C.S. §§8541-8542; *see also Dunkle v. Middleburg Municipal Authority*, 842 A.2d 477, 479 (Pa. Cmwlth. 2004). To qualify for an exception, a plaintiff must prove that: (1) the damages would be recoverable under common law or a statute against a person unprotected by immunity; and (2) the negligent act of the local agency or its

---

[6] In footnote 3 of their brief, the Borough defendants move this Court "to dismiss and quash this appeal for the failure to join an indispensable party, i.e., Daisy Sobat." (Brief for Appellees, at 9 n.3.) Specifically, they state:

> To the extent that this Court deems Daisy Sobat indispensable to this appeal where it was alleged in the Complaint that the "Plaintiffs" incurred the expense at issue and thus implicitly were aggrieved (R. 12a-13a), this appeal should be dismissed and quashed for the failure to join an indispensable party as the Notice of Appeal (R. 101a-104a) filed by Plaintiff Eileen Sobat only does not serve to function as an appeal by Daisy Sobat.

*Id.* at 9 n.3. We do not deem Daisy Sobat's interest indispensable to this appeal such that no decree can be made without impairing her rights. *See In re Silverman*, 90 A.3d 771, 779 (Pa. Cmwlth. 2014); *see also HYK Construction Company, Inc. v. Smithfield Township,* 8 A.3d 1009, 1015 (Pa. Cmwlth. 2010). However, Daisy Sobat is a party to this appeal and is deemed an appellee pursuant to Pa.R.A.P. 908 ("[a]ll parties to the matter in the court from whose order the appeal is taken shall be deemed parties in the appellate court . . . [and a]ll parties in the appellate court other than the appellant shall be appellees"). *See Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 954 (Pa. Super. 2013). We note that Sobat's counsel informed the Court at oral argument that Daisy Sobat passed away on June 26, 2015.

employees that caused the injury falls within one of the limited exceptions to immunity.  42 Pa.C.S. §8542(a).

Section 8542(b)(5) of the PSTCA, the utility service facilities exception, provides that a local agency may be held liable for:

> *A dangerous condition of the facilities of . . . sewer . . . owned by the local agency* and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. §8542(b)(5) (emphasis added); *see also McCarthy v. City of Bethlehem*, 962 A.2d 1276, 1278-79 (Pa. Cmwlth. 2008).  Because of the expressed legislative intent to insulate political subdivisions from tort liability, the exceptions to immunity are strictly construed.  *Metropolitan Edison Company v. Reading Area Water Authority*, 937 A.2d 1173, 1175 (Pa. Cmwlth. 2007).

Municipalities are under no common law duty to provide a sewerage system.  *Yulis v. Borough of Ebensburg*, 128 A.2d 118, 120 (Pa. Super. 1956).  Therefore, a municipality cannot be held liable for damages resulting from an inadequate sewer system.  *Id.*  However, municipalities will be liable for injuries resulting from negligent construction or maintenance of the system.  *McCarthy*, 962 A.2d at 1279-80; *see Yulis*, 128 A.2d at 120 ("[municipalities] may be called upon to answer for injuries resulting from negligence in the actual work of construction or for failure to keep the work in repair after it is completed").

9

Although the issue of what constitutes a dangerous condition is a question of fact for the jury, whether an action is barred by immunity is purely a question of law. *Le-Nature's, Inc.* In order for liability to be imposed under Section 8542(b)(5), a strictly legal determination must be made in the first instance that the injury was caused by a condition of the property itself, which has its origin or source in the property. *Metropolitan Edison Company v. City of Reading*, 125 A.3d 499 (Pa. Cmwlth. 2015).

In the instant case, Sobat's claim against the Borough is founded upon the alleged negligent misrepresentation of the Borough, through its employees, that a grinder pump could not be installed on the property because it was prohibited by ordinance. Sobat contends that such information was false and the Borough had a public duty to convey correct information regarding its ordinances. Her claim is that, had the Borough defendants conveyed correct information regarding the grinder pump in the first instance, the second excavation into the street would not have been necessary.

Notably, Sobat is not alleging that any injuries were sustained, and no damages are sought, as to the first excavation or due to the sewage problems caused by the reverse flow. Further, no damages are sought for the grinder pump itself. Rather, Sobat contends that, had the negligent misrepresentation not occurred, a grinder pump would have been installed earlier and she would not have had to perform the second excavation. Thus, Sobat seeks damages in the nature of reimbursement of expenses related to that second excavation, which includes those pertaining to the opening and resurfacing of the street.

10

## Condition of Property Itself

Before we can analyze whether the complaint sufficiently avers a claim that falls within the utility service facilities exception, the Court must make a threshold legal determination that Sobat's injury was caused by a condition of the property itself – that it had its origin or source in the property. *Metropolitan Edison,* 125 A.3d at 502.

In *Le-Nature's Inc.*, a factory owner (Le-Nature's) undertook a construction project at its place of business and hired a general contractor for the same. The general contractor contracted with a drilling company to drill and place caissons for the project. Prior to commencement of the work, the general contractor called the Pennsylvania One Call (One Call)[7] to determine whether there were any utility lines located where the drilling company was required to drill. The city did not respond to the request and drilling commenced on the project. While performing work on the project, the drilling company struck and damaged a sewer line owned by the city. Le-Nature's filed a complaint against the city for its failure to respond to the One Call request. The trial court sustained preliminary objections filed by the city on the basis of governmental immunity.

On appeal to this Court, we concluded that the allegations contained in Le-Nature's complaint, if proven, established a claim in negligence. We then

---

[7] The "One Call System" is defined in what is commonly known as the Pennsylvania One Call Act, the Act of December 10, 1974, P.L. 852, *as amended*, 73 P.S. §§176-186. The "One Call System" is, in pertinent part, a "communication system established within this Commonwealth to provide a single nationwide toll-free telephone number or 811 number for excavators or designers or any other person covered by this act to call facility owners and notify them of their intent to perform excavation, demolition or similar work as defined by this act." Section 1 of the Pennsylvania One Call Act, 73 P.S. §176. After a facility owner receives a request under the One Call System, it is required to identify its utility lines located within the project site. Section 2 of the Pennsylvania One Call Act, 73 P.S. §177.

considered the applicability of the utility service facilities exception to governmental immunity, 42 Pa.C.S. §8542(b)(5). We recognized that the relevant inquiry in determining whether the exception applied is "whether the allegedly dangerous condition derived from, originated or had its source as the local agency's realty." *Le-Nature's,* 913 A.2d at 994. We found that Le-Nature's failed to allege a dangerous condition of the city's sewer system itself. Rather, it merely averred that the city's inaction created a dangerous condition generally. Although the city's failure to comply with the requirements of the One Call Act constituted negligence *per se*, we indicated that this violation, alone, does not "render the sewer system dangerous or unsafe for the purpose for which it was intended." *Id.* Because the dangerous condition was alleged to have derived from the city's failure to comply with the One Call Act and the contractor hitting the line, we determined that there were no allegations of a dangerous condition of the sewer system itself. Therefore, we concluded that the utility service facilities exception to immunity was inapplicable.

Here, as in *Le-Nature's*, Sobat is not claiming injury due to a dangerous condition that derived from, originated, or had as its source the Borough's sewer system itself. She does not aver that her injury was caused by the reverse flow, the sewage backup and drainage sustained, or the impossibility of obtaining gravity flow. Rather, the injury alleged is that the second excavation had to be performed as a result of the Borough's negligent misrepresentation. All injuries alleged are claimed to have been caused solely by the alleged negligent misrepresentation, and not from a condition of the property itself. Accordingly, the utility service facilities exception cannot provide a waiver of governmental immunity.

12

## Dangerous Condition

Assuming *arguendo* the averments could satisfy this threshold determination, the remaining elements of the utility service facilities exception cannot be met. For this exception to apply, the injury must stem from a "dangerous condition" of sewer facilities "owned by the Borough." 42 Pa.C.S. §8542(b)(5).

Sobat argues that a dangerous condition is alleged in paragraph seventeen of the Complaint, which states that "Mr. George found the sewage lateral needed immediate attention because it presented a danger to the health of the occupants." This allegation fails to bring the negligent misrepresentation claim within the immunity exception. The reverse flow condition is not claimed to be the cause of Sobat's injury and damages. Moreover, no contention is made that the reverse flow condition was the result of sewer lines that were owned or maintained by the Borough. Rather, the reverse flow condition pertains to Sobat's own sewer service lateral; there is no allegation that the Borough owned or had a duty to maintain Sobat's lateral.

It is argued that the Borough defendants were negligent in their inspection of the Sobat lateral's original installation/connection to the main line.[8] Again, such inspection is not alleged to be the cause of any injury or damages sustained by Sobat in this negligent misrepresentation claim. Sobat's negligent

---

[8] The contention is that an occupancy permit must have been issued at some point for this residence, and that it should not have been issued because it was contingent upon the lateral passing inspection. Sobat contends that the lateral could not have met those inspection requirements and, therefore, the Borough must have been negligent in passing it for inspection.

13

inspection argument is asserted solely as providing a basis for the Borough defendants' notice of the reverse flow condition. Even if Sobat had alleged that her injury was caused by the Borough's negligent inspection of Sobat's lateral when it was installed, the utility service facilities exception is inapplicable. Any defect alleged must originate from the Borough's property itself and not merely from the conduct of the Borough's employees.

In *Metropolitan Edison Company*, 937 A.2d at 1174, the authority was performing excavation work with a boring machine and struck and damaged a utility line owned by Metropolitan Edison Company (Met-Ed). Met-Ed brought an action against the authority to recover damages, alleging that the authority failed to exercise due care and take reasonable steps to avoid damaging its property, as required by the Pennsylvania One Call Act. This Court affirmed the trial court's grant of summary judgment in favor of the authority on the basis that the utility service facilities exception to governmental immunity was inapplicable. There, we determined that the dangerous condition alleged had originated from the conduct of the authority's employees, and Met-Ed failed to allege a dangerous condition that had the authority's water line as its source. *Id.* at 1175.

In short, Sobat has not alleged a dangerous condition of sewer facilities owned by the Borough. It is clear that any alleged negligence stemmed solely from the Borough's employees' conduct and not from the Borough's sewer lines. Accordingly, the complaint fails to set forth allegations that would bring this claim within the utility service facilities exception under section 8542(b)(5).

14

## Right to Amend Complaint

While it is clear that the preliminary objections should be sustained for the failure to state a claim falling within an exception to immunity, Sobat argues that she should be permitted to amend her complaint. Although an amended complaint may be filed as of course in response to preliminary objections, no amended complaint was filed. *See* Pa.R.C.P. No. 1028(c)(1). No motion for leave to amend the complaint was presented to the trial court prior to the court's decision. Further, Sobat did not request leave to amend her complaint in her response or brief in opposition to the preliminary objections. Although a trial court may, on its own motion, permit amendment of a pleading, *Suppan v. Kratzer*, 660 A.2d 226, 231 (Pa. Cmwlth. 1995), the trial court did not provide for such relief in its order sustaining the preliminary objections and dismissing her complaint.

It is well established that leave to amend is within the sound discretion of the trial court, *Reed v. Pray*, 53 A.3d 134, 143 (Pa. Cmwlth. 2012), and will not be reversed absent a clear abuse of discretion. *Feingold v. Hill*, 521 A.2d 33, 39 (Pa. Super. 1987). We note that amendment of the complaint is properly denied where the complaint's defects are so substantial that amendment would be futile. *Reed,* 53 A.3d at 143-44; *Weaver v. Franklin County,* 918 A.2d 194, 203 (Pa. Cmwlth. 2007). Moreover, the trial court does not abuse its discretion in failing to grant leave to amend where further amendment could not circumvent a defendant's immunity. *Holt v. Northwest Pennsylvania Training Partnership*, 694 A.2d 1134, 1138 n.9 (Pa. Cmwlth. 1997).

In the above analysis with regard to the immunity exception, we have considered not only the averments of the complaint but all contentions asserted by

15

Sobat in her brief. Even if Sobat amended the complaint to add these contentions, the claim would still fall short under the utility service facilities immunity exception. Given the nature of the case, we conclude that amendment of the complaint would be futile. Because amendment would not circumvent the Borough defendants' immunity in this case, the trial court did not abuse its discretion in failing to give Sobat an opportunity to amend her complaint.

## Procedural Due Process

As noted above, Sobat claims that her procedural due process rights were violated by the trial court's grant of permission to the Borough defendants to file their preliminary objections and brief in excess of the page limits set forth by local rule. Sobat cites no case law or other legal authority that supports her contention that her right to procedural due process was denied in these circumstances. Further, Sobat fails to develop the procedural due process claim such that the Court can conduct a meaningful review.[9] As noted by our Supreme Court in *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014):

> [O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain "such discussion and citation of authorities as are deemed pertinent." Pa. R.A.P. 2119(a). "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue

---

[9] Notice and the opportunity to be heard are the fundamental elements of due process. *City of Philadelphia v. Urban Market Development, Inc.,* 48 A.3d 520, 522 (Pa. Cmwlth. 2012). The concept of due process is flexible and provides only such procedural safeguards as the situation warrants. *In re McGlynn*, 974 A.2d 525, 532 (Pa. Cmwlth. 2009). Key to the determination of whether a party has been denied procedural due process is whether that party has suffered demonstrable prejudice. *Urban Market Development, Inc.,* 48 A.3d at 522. Sobat offers no discussion as to how she was denied procedural due process.

> in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court ... ] to formulate [a]ppellant's arguments for him."

*Id.* (quoting *Wirth v. Com.*, 95 A.3d 822, 837 (Pa. 2014) (quoting *Commonwealth v. Johnson,* 985 A.2d 915, 924 (Pa. 2009)).  Therefore, Sobat's claim of violation of procedural due process is waived.

### Conclusion

The trial court did not err in sustaining the Borough defendants' preliminary objections based on governmental immunity.  Dismissal of Sobat's negligent misrepresentation claim was proper because there are no averments that would bring the claim under the utility service facilities waiver of immunity. Further, any amendment of the complaint would be futile and would not bring the claim within an immunity exception.  Therefore, the trial court did not abuse its discretion in failing to provide Sobat an opportunity to amend the complaint.

Accordingly, the trial court's order will be affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daisy Sobat and Eileen Sobat    :
                            :   No.  1843 C.D. 2015
             v.              :
                            :
The Borough of Midland,        :
A Municipal Corporation;      :
Diane Kemp, Manager of the   :
Borough of Midland and      :
Chad Miller, Building/Sewer   :
Inspector of the Borough of Midland :
                            :
Appeal of:  Eileen Sobat     :

## _ORDER_

AND NOW, this 9th day of June, 2016, the August 24, 2015 order of the Court of Common Pleas of Beaver County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge