# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Grey Fox Plaza, Thomas Krouse,   :
Donna Krouse and Steven Krouse,   :
            Appellants   :
                        : No. 344 C.D. 2016
          v.   : Argued: December 12, 2016
                        :
Herbert, Rowland and Grubic, Inc.   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                     **FILED: January 30, 2017**

This is an appeal filed by Grey Fox Plaza, Thomas Krouse, Donna Krouse and Steven Krouse (Plaintiffs) from orders of the Court of Common Pleas of Lycoming County (trial court) in a civil negligence and trespass action dismissing their claims against the Lycoming County Water & Sewer Authority (Authority) on preliminary objections and granting summary judgment in favor of the remaining defendant, Herbert, Rowland and Grubic, Inc. (HRG).[1]  For the reasons set forth below, we affirm.

---

[1] The caption in this appeal lists only HRG as a defendant due to the fact that the caption of both the trial court's final order and Plaintiffs' notice of appeal listed only HRG and omitted all defendants dismissed on preliminary objections.  The original caption in the trial court was *Grey Fox Plaza, Thomas Krouse, Donna Krouse, and Steven Krouse v. Lycoming County Water & Sewer Authority; Herbert, Rowland and Grubic, Inc.; and David Swisher, P.E.*

Plaintiffs' action arose out of the Authority's installation of a water line on Plaintiffs' Grey Fox Plaza property in Fairfield Township, Pennsylvania (the Property). In 2009, Plaintiffs agreed to convey approximately one acre of land that they owned adjoining the Property (which was originally also part of the Grey Fox Plaza property) to the Authority. (Complaint ¶23, R.R. at 19.)[2] This conveyance was made so the Authority could construct a water tower on the conveyed lot, and the Authority agreed in exchange to install water and sewer main service to all of Plaintiffs' Grey Fox Plaza lots that did not already have water and sewer main service. (*Id.* ¶¶23-24, R.R. at 19.)

HRG, an engineering firm hired by the Authority, prepared a Grey Fox Plaza Subdivision Plan (the Subdivision Plan) in connection with this conveyance. (Complaint ¶¶25-27, R.R. at 19-20.) The Subdivision Plan showed a street with a 50-foot wide right-of-way, Grey Fox Drive, extending from Lycoming Mall Drive at one end of the Property to a cul-de-sac beyond the lot that was conveyed to the Authority. (*Id.* Ex. A, R.R. at 40-41.) On February 5, 2010, Plaintiffs executed a "Certification of Ownership, Acknowledgement of Plan and Offer of Dedication" on the Subdivision Plan stating under oath that

> THEY ARE THE OWNERS AND EQUITABLE OWNER, RESPECTIVELY, OF THE PROPERTY SHOWN ON THIS PLAN, THAT THE PLAN THEREOF WAS MADE AT THEIR DIRECTION, THAT THEY ACKNOWLEDGE THE SAME TO BE THEIR ACT AND PLAN, THAT THEY DESIRE THE SAME TO BE RECORDED, AND THAT

---

[2] Plaintiffs allege that plaintiffs Thomas Krouse, Donna Krouse and Steven Krouse own the Property and that plaintiff Grey Fox Plaza is the name under which they are doing business. (Complaint ¶¶1-2, R.R. at 16.) Steven Krouse, however, did not become an owner of the Property until December 2012. (Preliminary Injunction Hearing Transcript (H.T.) at 17-18, R.R. at 870-871.)

<u>ALL STREETS AND OTHER PROPERTY IDENTIFIED AS PROPOSED PUBLIC PROPERTY (EXCEPTING THOSE AREAS LABELED 'NOT FOR DEDICATION') ARE HEREBY DEDICATED TO THE PUBLIC USE</u>.

(*Id.* ¶30 & Ex. A, R.R. at 20-21, 40) (emphasis added). The Subdivision Plan was approved by Fairfield Township (Township) and was recorded on February 25, 2009. (*Id.* ¶25 & Ex. A, R.R. at 19, 40; Plaintiffs' Answer to HRG Summary Judgment Motion ¶19, R.R. at 611.) At the time, only part of Grey Fox Drive had been paved and was in use as a street; the portion of Grey Fox Drive shown on the Subdivision Plan as running alongside the Authority's lot to the cul-de-sac had not been constructed and has never been constructed. (Complaint ¶29, R.R. at 20; Plaintiffs' Answer to HRG Summary Judgment Motion ¶20, R.R. at 611; Preliminary Injunction Hearing Transcript (H.T.) at 25-26, 36-37, R.R. at 878-879, 889-890.)

In May 2011, Plaintiffs signed a Grant of Pipeline and Construction Easement that granted the Authority a 40-foot wide temporary construction easement and a 20-foot wide permanent pipeline easement on the undeveloped portion of the Property for a water line that would run from the water tower that the Authority had constructed on its lot. (Complaint ¶¶35-38 & Ex. B, R.R. at 22, 84; HRG Summary Judgment Motion ¶¶25-26 & Ex. K, R.R. at 406, 513-519; Plaintiffs' Answer to HRG Summary Judgment Motion ¶¶25-26, R.R. at 612.) These easements were located alongside the unbuilt portion of Grey Fox Drive on the opposite side from the Authority's lot and water tower, but did not include the connecting land within the 50-foot wide Grey Fox Drive right-of-way shown on the Subdivision Plan. (HRG Summary Judgment Motion Ex. K, R.R. at 513-519; Plaintiffs' Answer to HRG Summary Judgment Motion ¶¶25-26, R.R. at 612.) The map attached to the Grant of Pipeline and Construction Easement signed by

3

Plaintiffs, however, showed that the water line would cross the unbuilt portion of Grey Fox Drive. (HRG Summary Judgment Motion Ex. K, R.R. at 519; Complaint ¶¶35-38 & Exs. B & C, R.R. at 22, 43, 46.) In September 2011, the Authority installed the water line under the unbuilt portion of Grey Fox Drive at the location depicted on the map attached to the Grant of Pipeline and Construction Easement. (HRG Summary Judgment Motion ¶31, R.R. at 407; Plaintiffs' Answer to HRG Summary Judgment Motion ¶31, R.R. at 614.)

On April 24, 2013, Plaintiffs commenced this action against the Authority, HRG, and an HRG engineer. Plaintiffs alleged in their Complaint that they did not grant the Authority any right-of-way or easement to install the water line under the unbuilt portion of Grey Fox Drive and asserted that defendants were therefore liable for trespass and for negligence in placing the line on Plaintiffs' property without permission. (Complaint ¶¶2, 40, 50, 53-59, 61(a), (c), (e), (g), (k)-(n), 63(a), (c), (e), (j)-(n), (p), 65(a), (c), (e), (j)-(n), (p), 67-72, R.R. at 16, 23-34.) Plaintiffs also alleged that defendants negligently installed the water line under the unbuilt Grey Fox Drive at an improper depth and location that interferes with the construction of Grey Fox Drive and with Plaintiffs' planned Grey Fox Plaza Phase II development on the Property. (Id. ¶¶42, 61(b), (d), (h)-(i), 63(b), (d), (g)-(h), 65(b), (d), (g)-(h), R.R. at 23, 26-29, 31-32.) This improper depth and location claim was based on the contentions that the water line was installed four feet underground near a steep slope and that compliance with the Township's road grade standards would require that Grey Fox Drive be constructed below the original surface of the land at the point where the water line was installed. (H.T. at 37, 42, 50-51, R.R. at 890, 895, 903-904.) Plaintiffs specifically asserted in the Complaint that their negligence claims were for professional negligence.

4

(Complaint ¶¶10, 14, 18, 20, R.R. at 17-19.) Plaintiffs' Complaint requested an injunction or judgment in ejectment requiring removal of the portion of the water line that is under the unbuilt Grey Fox Drive. (Complaint ¶47 & Count V, R.R. at 24, 34-35.) Plaintiffs' Complaint also sought damages for financial losses from the inability to complete Grey Fox Plaza Phase II, increased costs of developing the Property, and diminished value of the Property. (Complaint ¶¶44-46, 49, 58, 73-75, R.R. at 23-25, 34-35.)[3]

The Authority filed preliminary objections seeking dismissal of Plaintiffs' claims against it on the ground that they were barred by governmental immunity under Sections 8541 and 8542 of the Judicial Code, commonly referred to as the Political Subdivision Tort Claims Act (PSTCA), 42 Pa. C.S. §§ 8541-8542. On January 21, 2014, the trial court sustained the Authority's preliminary objections and dismissed all of Plaintiffs' claims against the Authority without prejudice to Plaintiffs' right to file an action to compel the Authority to file a declaration of taking. (1/21/14 Trial Court Op.) Defendants HRG and the HRG engineer also filed preliminary objections. Plaintiffs, in response, agreed to dismiss their claims against the individual HRG engineer without prejudice and the trial court dismissed him from the action, but the trial court overruled HRG's preliminary objections challenging the specificity of Plaintiffs' allegations against it. (12/20/13 Trial Court Order.)

---

[3] With their Complaint, Plaintiffs filed a petition for issuance of a preliminary injunction directing the Authority to remove and relocate the water line, but following a hearing on that petition, Plaintiffs withdrew their request for preliminary injunctive relief, without prejudice to their right to seek a permanent injunction at trial. Plaintiffs' Complaint also sought punitive damages, but the trial court granted the Authority's and HRG's preliminary objections to Plaintiffs' punitive damages claims (1/21/14 Trial Court Op. at 5; 12/20/13 Trial Court Order at 2), and Plaintiffs do not challenge the dismissal of their punitive damages claims in this appeal.

Following the trial court's preliminary objections rulings, HRG answered the Complaint and Plaintiffs and HRG proceeded with discovery. In discovery, HRG served interrogatories on Plaintiffs that included expert interrogatories. Plaintiffs responded to HRG's expert interrogatories stating that they had "not yet determined which experts will be called at the time of trial" and did not identify any expert witnesses. (Plaintiffs' Responses to HRG's Interrogatories, R.R. at 580-587.) The trial court's scheduling order required that Plaintiffs provide expert reports by September 25, 2015 and that the parties complete discovery by November 20, 2015. (8/10/15 Amended Scheduling Order, R.R. at 466.) Plaintiffs never supplemented their interrogatory answers to identify any expert witnesses and did not produce any expert reports.

On November 30, 2015, after discovery was closed, HRG filed a motion for summary judgment, asserting, *inter alia*, that Plaintiffs' trespass claims were barred by their dedication in the Subdivision Plan and consent to the placement of the water line at the location under the unbuilt portion of Grey Fox Drive where it was installed and that Plaintiffs' lack of expert testimony prevented them from proving their negligence claims. Plaintiffs did not file any affidavit or opinion of any expert in response to HRG's summary judgment motion. On February 3, 2016, the trial court granted summary judgment to HRG based on the dedication in the Subdivision Plan and Plaintiffs' failure to offer expert opinion in support of their claims. (2/3/16 Trial Court Op.) On March 3, 2016, Plaintiffs timely appealed both the trial court's summary judgment order and its order sustaining the Authority's preliminary objections, which became final upon the entry of summary judgment for the last remaining defendant, HRG.

6

Before this Court, Plaintiffs argue: 1) that their claims against the Authority are not barred by governmental immunity; 2) that their failure to identify experts and produce expert reports did not prevent them from proving their claims; and 3) that the dedication in the Subdivision Plan did not include the unbuilt portion of Grey Fox Drive and therefore does not bar their trespass claims. We address each of these issues in turn. Because this is an appeal from summary judgment and the sustaining of preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary. *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011); *Gale v. City of Philadelphia*, 86 A.3d 318, 319 n.1 (Pa. Cmwlth. 2014).

*The Authority's Governmental Immunity*

Section 8541 of the PSTCA provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. This immunity applies both to damages claims and to claims for injunctive relief that require the government agency to take affirmative action to make physical alterations to property. *Swift v. Department of Transportation*, 937 A.2d 1162, 1168 & n.7 (Pa. Cmwlth. 2007) ("The General Assembly has not waived immunity for equitable claims seeking affirmative action by way of injunctive relief"); *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331 (Pa. Cmwlth. 1996). *Compare E-Z Parks, Inc. v. Larson*, 498 A.2d 1364, 1369-70 (Pa. Cmwlth. 1985), *aff'd without op.*, 503 A.2d 931 (Pa. 1986) (injunction restraining local agency from taking action is not barred by PSTCA because it is not a damages claim). The term "local

7

agency" is defined as including any "government unit other than the Commonwealth government." 42 Pa. C.S. § 8501. There is no dispute that the Authority is a local agency.

> Section 8542 of the PSTCA provides:
>
> (a) Liability imposed.--<u>A local agency shall be liable</u> for damages on account of an injury to a person or property within the limits set forth in this subchapter <u>if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b)</u>:
>
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) <u>The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)</u>. As used in this paragraph, <u>"negligent acts"</u> <u>shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct</u>.

42 Pa. C.S. § 8542(a) (emphasis added). The eight categories set forth in Section 8542(b) of the PSTCA as to which immunity is waived include "[r]eal property" and "[u]tility service facilities." 42 Pa. C.S. § 8542(b)(3), (5). Plaintiffs contend that their claims fall within either the real property exception or the utility service facilities exception and do not claim that any of the other exceptions to immunity in Section 8542(b) of the PSTCA are applicable to this case.

8

The real property exception permits imposition of liability on a local agency for negligent acts with respect to the "care, custody or control of real property in the possession of the local agency," but specifically excludes claims arising out of "<u>facilities of</u> steam, sewer, <u>water</u>, gas and electric <u>systems owned by the local agency and located within rights-of-way</u>." 42 Pa. C.S. § 8542(b)(3) (emphasis added).[4] The utility service facilities exception permits imposition of liability on a local agency for negligent acts with respect to "[a] <u>dangerous condition of the facilities of</u> steam, sewer, <u>water</u>, gas or electric <u>systems owned by the local agency and located within rights-of-way</u>." 42 Pa. C.S. § 8542(b)(5) (emphasis added).[5] Because the real property exception excludes utility facilities

---

[4] Section 8542(b)(3) provides:

> *Real property*.--The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:
>
> (i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
>
> (ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
>
> (iii) streets; or
>
> (iv) sidewalks.

42 Pa. C.S. § 8542(b)(3).

[5] Section 8542(b)(5) provides:

> *Utility service facilities*.--A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury

**(Footnote continued on next page…)**

9

"located within rights-of-way" and the utility service facilities exception is limited to utility facilities "located within rights-of-way," these immunity exceptions are mutually exclusive.

Plaintiffs argue that if the Authority did not have a valid right-of-way under the unbuilt portion of Grey Fox Drive, the Section 8542(b)(3)(ii) exclusion of water and other systems "located within rights-of-way" is not satisfied and the real property exception applies, and contend that the utility service facilities exception applies only if the Authority had a valid right-of-way. This assertion is incorrect. The phrase "located within rights-of-way" in Section 8542(b) does <u>not</u> require a legally valid right-of-way and the language "facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way" encompasses pipelines and other equipment installed on land off the local agency's property, even where the agency has no valid right-of-way or easement. *County of Allegheny v. Dominijanni*, 531 A.2d 562, 564-65 (Pa. Cmwlth. 1987) (utility service facilities exception applies to sewer pipe installed on private property without owner's permission); *see also Primiano v. City of Philadelphia*, 739 A.2d 1172, 1174-76 (Pa. Cmwlth. 1999) (utility service facilities exception applied to city-owned water meter on plaintiff's property). Because the segment of the water line at issue here is on a strip of land that is not on or intended to be part

---

**(continued…)**
> which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. C.S. § 8542(b)(5).

10

of the Authority's lot, the water line is "located within rights-of-way" within the meaning of that term under the PSTCA, regardless of whether the Authority had a legal right to install the water line under the unbuilt portion of Grey Fox Drive. *Dominijanni*, 531 A.2d at 564-65. The real property exception is therefore inapplicable and only the utility service facilities exception, Section 8542(b)(5), can provide an exception to the Authority's immunity.

Unlike the real property exception, the utility service facilities exception requires not merely that the agency property caused damage, but that the plaintiff show a "dangerous condition" of the agency property. 42 Pa. C.S. § 8542(b)(5). Plaintiffs contend that they have satisfied this requirement because they have alleged that the location of the water line causes or creates "a dangerous condition that interferes with Plaintiffs' planned development" and "a dangerous condition that interferes with the use of Grey Fox Drive as a street" and that it "creates a dangerous condition to the extent that if Grey Fox Drive is constructed as planned, the subject water line would be exposed above ground rending [*sic*] the street impassable." (Complaint ¶¶5, 42, 61(h)-(i), R.R. at 16-17, 23, 26-27.)

Ordinarily, what constitutes a dangerous condition under exceptions to immunity is a question of fact for the jury. *Bendas v. Township of White Deer*, 611 A.2d 1184, 1186-87 (Pa. 1992); *Falor v. Southwestern Pennsylvania Water Authority*, 102 A.3d 584, 587 (Pa. Cmwlth. 2014); *Le-Nature's, Inc. v. Latrobe Municipal Authority*, 913 A.2d 988, 994 (Pa. Cmwlth. 2006). The cases stating that dangerousness is a jury question, however, involve situations where there was a personal injury or physical damage to property that could support a claim of danger, not a claim that the condition is "dangerous" solely because it impairs certain future uses of a property. *See, e.g., Bendas*, 611 A.2d at 1185 (absence of

11

traffic control devices caused motor vehicle accident); *Falor*, 102 A.3d at 585 (burst water pipe); *Le-Nature's, Inc.*, 913 A.2d at 990 (damaged sewer line). In contrast, mere inadequacy of a utility system to serve a property owner's needs does not constitute a condition for which immunity is waived by Section 8542(b)(5). *See Sobat v. Borough of Midland*, 141 A.3d 618, 620, 624-26 (Pa. Cmwlth. 2016) (improper height of sewer line that required additional pump did not fall within Section 8542(b)(5) waiver of immunity). Whether a local agency is immune under the facts alleged is a question of law. *Sobat*, 141 A.3d at 624; *Falor*, 102 A.3d at 587; *Le-Nature's, Inc.*, 913 A.2d at 994.

Here, there is no claim that any condition of the water line or its location itself has caused or threatens to cause personal injury or property damage. There is, for example, no claim that the depth of the water line creates a risk of the line freezing and bursting. Rather, the only "danger" alleged by Plaintiffs is that the water line's presence interferes with their intended development of the Property and that they allegedly cannot construct their proposed road as a result of the water line's depth and location. "It is a fundamental principle of statutory construction that each word in a statutory provision is to be given meaning and not be treated as mere surplusage." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Ketterer)*, 87 A.3d 942, 947-48 (Pa. Cmwlth. 2014); *see also* Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(a); *In re Employees of Student Services*, 432 A.2d 189, 195 (Pa. 1981). Moreover, the exceptions to governmental immunity are to be construed narrowly. *Sobat*, 141 A.3d at 624; *Gale*, 86 A.3d at 320. Construing the utility service facilities exception to apply to the impairment of use of property alleged by Plaintiffs would read the word "dangerous" out of Section 8542(b)(5) and would be inconsistent with the

12

requirement that the exceptions to immunity must be construed narrowly. Because Plaintiffs' claims do not arise out of a dangerous condition of the Authority's water line, the trial court correctly held that Plaintiffs' claims do not satisfy the requirements of the utility services exception to governmental immunity.[6]

Plaintiffs also argue that the Authority is not immune because they have alleged willful misconduct. This contention is plainly without merit. The PSTCA expressly limits the exceptions to local agency immunity to negligence claims and does <u>not</u> waive local agency immunity for claims of willful misconduct. 42 Pa. C.S. § 8542(a)(2); *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014); *City of Philadelphia v. Brown*, 618 A.2d 1236, 1238-39 (Pa. Cmwlth. 1992); *City of Philadelphia v. Glim*, 613 A.2d 613, 617 (Pa. Cmwlth. 1992). Willful misconduct is an exception to the official immunity of local agency

---

[6] The Court notes that in *Rawlings v. Bucks County Water and Sewer Authority*, 702 A.2d 583 (Pa. Cmwlth. 1997), this Court held that a local agency was not immune under the PSTCA from a claim for trespass damages and ejectment where it had constructed a pumping station that encroached on the adjoining landowners' property. In *Rawlings*, however, the trespass was an erroneous extension of an agency facility that was intended to be on agency property, not an invalid right-of-way for a pipe or other utility line. *Id.* at 584. Accordingly, the real property exception to governmental immunity was applicable to the plaintiffs' claims. While the Court stated in *Rawlings* that the plaintiffs' "claims for damages for continuing trespass … upon their land" were "permitted under the exceptions provided in 42 Pa. C.S. § 8542(b)(3) and (5)," the Court did not consider the language and requirements of the utility service facilities exception and the Court's holding that the trespass claim was within an exception to immunity because "the pumping station constructed by the Authority is 'real property' which continues to cause injury to Landowners' property" applied only the real property exception. 702 A.2d at 587. Because Plaintiffs' claims do not fall within the real property exception, *Rawlings* is inapplicable here. While the *Rawlings* Court also stated that the landowners' ejectment claim was not barred by immunity because it was not a claim for damages, *id.* at 586-87, that ruling is inconsistent with this Court's later ruling in *Swift* that affirmative injunctive relief is subject to the same immunity as damages claims and was unnecessary to the Court's decision, as the landowners' claims were held to fall within the real property exception to immunity. Moreover, the situation in *Rawlings* was significantly different from Plaintiffs' situation here. In *Rawlings*, the local agency had successfully barred the landowners from eminent domain compensation for the encroachment. 702 A.2d at 586. Here, in contrast, the trial court's ruling was without prejudice to Plaintiffs' right to seek eminent domain compensation.

13

employees, not an exception to the immunity of the agency itself. 42 Pa. C.S. § 8550; *Orange Stones Co.*, 87 A.3d at 1022-23; *Brown*, 618 A.2d at 1238; *Glim*, 613 A.2d at 617. Plaintiffs did not sue any Authority employees; the only governmental party that Plaintiffs sued was the Authority itself. Plaintiffs' claims of willful misconduct and intentional conduct therefore could not provide any exception to immunity. *Orange Stones Co.*, 87 A.3d at 1022-23; *Brown*, 618 A.2d at 1238-39; *Glim*, 613 A.2d at 617.

*Plaintiffs' Failure to Produce Expert Reports*

In a professional negligence action, unless the negligence is obvious or within a layperson's understanding, expert testimony is required to prove the applicable professional standard of care and that the defendant breached the professional standard of care. *Merlini v. Gallitzin Water Authority*, 980 A.2d 502, 506-07 (Pa. 2009); *Powell v. Risser*, 99 A.2d 454, 456 (Pa. 1953); *Guy M. Cooper, Inc. v. East Penn School District*, 903 A.2d 608, 617 (Pa. Cmwlth. 2006); *Storm v. Golden*, 538 A.2d 61, 64-65 (Pa. Super. 1988). Absence of expert opinion is fatal to a claim for professional negligence and judgment for the defendant is properly granted for failure to produce expert opinion where the breach of professional duty is not obvious or within the knowledge of laypersons. *Powell*, 99 A.2d at 456-58 (judgment n.o.v. for physician where plaintiff's experts did not opine that he breached the standard of care); *Guy M. Cooper, Inc.*, 903 A.2d at 617-18 (architect was entitled to summary judgment where plaintiff's only expert report did not opine as to either the architectural standard of care nor a breach of that standard); *Storm*, 538 A.2d at 64-66 (attorney entitled to judgment as a matter of law in legal

14

malpractice action where plaintiff failed to identify experts and provide expert reports).

Plaintiffs argue that their failure to produce expert reports was not a valid basis for summary judgment because expert testimony was not necessary to prove the claims that they asserted against HRG. We agree that expert testimony was not essential to Plaintiffs' trespass claims and that the summary judgment for HRG on Plaintiffs' trespass claims cannot be affirmed on this basis. Expert testimony concerning the professional standard of care or breach of the standard of care is not necessary to prove a claim of trespass or negligence in placing a pipe on property without a right-of-way, easement, or permission of the owner because breach of the duty not to trespass on others' property is a claim for ordinary negligence, not professional negligence. *Merlini*, 980 A.2d at 507-08 (no expert testimony concerning standard of care or defendant's conduct was required to prove claim that engineering firm negligently directed installation of water line on plaintiff's property without permission). While the Supreme Court recognized in *Merlini* that expert testimony could be necessary to prove where property lines or rights-of-way were located, *id.* at 507-08, the location of the property lines, rights-of-way and alleged rights-of-way were not in dispute here; only their legal effect and status was disputed.

Plaintiffs' claims against HRG based on the depth and location of the water line, however, were professional negligence claims that required expert testimony. Plaintiffs repeatedly alleged in their Complaint that their negligence claims were for "professional negligence" and "professional liability." (Complaint

15

(¶¶10, 14, 18, 20, R.R. at 17-19.)[7]  Unlike a claim for trespass, a claim against an engineering firm for negligence in its decisions in choosing the depth and location of a water line involves engineering judgment and is therefore based on a failure to exercise professional skill, rather than a breach of duties that all citizens owe to one another.  In addition, neither the applicable professional standard of care nor whether HRG breached professional standards is obvious or within the knowledge of lay persons.  Plaintiffs' claims that HRG was liable for installation of the water line at an unsuitable depth and location depended on the effect of road construction standards, the proper depth of a water line, and an engineer's responsibilities with respect to the placement of underground water lines.  All of these issues are matters beyond lay knowledge that require expert testimony.  Plaintiffs themselves recognized this, as they represented in certificates of merit that they had a written statement of a licensed professional supporting a claim of breach of professional standards and did not assert that expert testimony was unnecessary.  (Certificates of Merit, R.R. at 88-93.)  Accordingly, Plaintiffs were required to prove by expert testimony the professional standard of care of engineers and that HRG breached that professional standard of care, and absent such expert opinion, HRG was entitled to summary judgment in its favor on Plaintiffs' claims based on the depth and location of the water line.  *Powell*, 99 A.2d at 456-58; *Guy M. Cooper, Inc.*, 903 A.2d at 617-18; *Storm*, 538 A.2d at 64-66.

---

[7] Contrary to Plaintiffs' contentions in the trial court, *Bruno v. Erie Insurance Co.*, 106 A.3d 48 (Pa. 2014), does not hold that actions against professionals are professional negligence actions only where there is privity between the plaintiff and the professional.  Rather, the Court in *Bruno* held that the certificate of merit requirement of Pa. R.C.P. No. 1042.3 applies only to professional liability claims brought by the professional's patient or client because Pa. R.C.P. No. 1042.1 expressly limits Rule 1042.3 to actions brought by the professional's patient or client. 106 A.3d at 73-74.  The issue here is whether expert testimony is required, not whether a certificate of merit was required.  Indeed, Plaintiffs filed certificates of merit.

Plaintiffs also contend that they were not required to disclose the expert testimony on which their claims depend because the experts that they may call at trial were not retained for litigation. This argument fails for two reasons. First, the contention that the necessary expert witnesses were not retained for litigation is inaccurate. While opinion that the depth and location of the water line is incompatible with Plaintiffs' future road construction might have been developed independently of the litigation, the trial court correctly concluded that any opinion that HRG breached its professional duties as an engineer would necessarily have been formed for litigation and trial. Plaintiffs were therefore required to respond to expert interrogatories and produce expert reports on the issue of whether HRG breached the standard of care. Plaintiffs' complete failure to do so, even after HRG filed its summary judgment motion, was properly held by the trial court to preclude them from satisfying their burden of proving their claims that HRG is liable for installation of the water line at an incorrect depth and location. *See* Pa. R.C.P. No. 4003.5(b); *Conner v. Tom*, 811 A.2d 6, 8-9 (Pa. Super. 2002); *Storm*, 538 A.2d at 65-66.

Second, summary judgment was properly granted even if Plaintiffs' proposed expert witnesses did not acquire their opinions for litigation and trial. HRG's expert interrogatories were not limited to experts retained for litigation and requested identification of "all persons whom you expect to call as expert witnesses at the time of trial." (Plaintiffs' Responses to HRG's Interrogatories, R.R. at 580.) Plaintiffs did not object to this interrogatory or indicate that they were limiting their responses to experts retained for litigation. (*Id.*) Given Plaintiffs' failure to identify any expert witnesses, HRG was entitled to seek summary judgment on the ground that "after the completion of discovery relevant

17

to the motion, including the production of expert reports," Plaintiffs had "failed to produce evidence of facts essential to the[ir] cause of action." Pa. R.C.P. No. 1035.2(2). In response, Plaintiffs were required not merely to rest on allegations, but to identify "evidence in the record establishing the facts essential to the cause of action … which the motion cite[d] as not having been produced." Pa. R.C.P. No. 1035.3(a)(2). Plaintiffs, in response to HRG's summary judgment motion, did not submit any affidavit, opinion or testimony of any expert witness or other evidence in the record demonstrating they had expert testimony that HRG breached its professional duties as an engineer or any admission by HRG that it breached professional standards. Summary judgment was therefore properly granted as to Plaintiffs' depth and location claims on the ground that Plaintiffs failed to produce the expert opinion essential to prove those claims.

*Plaintiffs' Trespass Claims*

No easement or right-of-way grant from the property owner is required for construction of a pipeline under a public road or street. *Pittsburgh National Bank v. Equitable Gas Co.*, 220 A.2d 12 (Pa. 1966); *see also Department of Transportation v. Municipal Authority of Borough of West View*, 919 A.2d 343, 346 (Pa. Cmwlth. 2007), *aff'd without op.*, 936 A.2d 487 (Pa. 2007) (government entity that has acquired right-of-way for street may authorize installation of utilities in that right-of-way). Plaintiffs argue that this rule does not apply because they did not intend to dedicate the unbuilt portion of Grey Fox Drive and that the trial court erred in granting summary judgment on their trespass claims because there were disputed issues of fact concerning their intent. We do not agree.

The trial court correctly held that Plaintiffs clearly and unambiguously dedicated the unbuilt portion of Grey Fox Drive as a public street. Plaintiffs expressly stated in the Subdivision Plan that "<u>ALL STREETS</u> AND OTHER PROPERTY IDENTIFIED AS PROPOSED PUBLIC PROPERTY (EXCEPTING THOSE AREAS LABELED 'NOT FOR DEDICATION') <u>ARE HEREBY DEDICATED TO THE PUBLIC USE</u>." (Complaint ¶30 & Ex. A, R.R. at 20-21, 40) (emphasis added). The unbuilt portion of Grey Fox Drive was depicted in the Subdivision Plan as a street and nothing in the Subdivision Plan distinguished between the paved and unbuilt portions of Grey Fox Drive or showed where the paved portion ended. (*Id.* Ex. A, R.R. at 40-41.)

Plaintiff Thomas Krouse did testify that he only intended to dedicate the paved portion of Grey Fox Drive when he executed the dedication in the Subdivision Plan (H.T. at 25-26, R.R. at 878-879.) That personal belief, however, is irrelevant. Where rights are based on an unambiguous writing, the parties' intent must be determined from the writing itself, not from testimony as to the parties' understanding or intent. *Steuart v. McChesney*, 444 A.2d 659, 661-63 (Pa. 1982); *Forbes Road Union Church and Sunday School v. Incorporated Trustees of the Salvation Army of Pennsylvania*, 113 A.2d 311, 313 (Pa. 1955); *In re Ware*, 814 A.2d 725, 731-32 (Pa. Super. 2002). Accordingly, testimony as to Plaintiffs' subjective intent in executing the dedication could not constitute grounds for denying summary judgment because it does not create a disputed issue of material fact.

Moreover, Plaintiffs' trespass claim is barred, independent of the dedication, because Plaintiffs knew and consented to the installation of the water line under the unbuilt portion of Grey Fox Drive. No cause of action for trespass

19

to real property can exist where the plaintiff permitted the entry on its property. *Gedekoh v. Peoples Natural Gas Co.*, 133 A.2d 283, 284-85 (Pa. Super. 1957) ("One cannot be guilty of a trespass by illegal entry if his wrong is committed subsequent to a rightful entry where such entry was by permission of the owner"); *see also Kennedy v. Consol Energy Inc.*, 116 A.3d 626, 636 (Pa. Super. 2015) ("to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so"). Where the plaintiff permits equipment to be installed on its property and money is expended installing that equipment, an irrevocable license is created and the plaintiff cannot revoke its permission and maintain an action for trespass. *Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc.*, 761 A.2d 139, 144 (Pa. Super. 2000). Here, the undisputed evidence showed that months before the water line was installed, Plaintiffs signed an easement that showed that the water line would be constructed on their property under the unbuilt portion of Grey Fox Drive and that they made no objection to its installation on their property at that location. (HRG Summary Judgment Motion Ex. K, R.R. at 519; Complaint ¶¶35-38 & Exs. B & C, R.R. at 22, 43, 46.)

HRG sought summary judgment on Plaintiffs' trespass claims, not only based on the dedication in the Subdivision Plan, but also on the ground that Plaintiffs consented to the placement of the water line under the unbuilt portion of Grey Fox Drive. (HRG Summary Judgment Motion ¶¶26, 46, 49-51 & Ex. K, R.R. at 406, 409-410, 513-519.) Although the trial court addressed only the dedication and not the undisputed evidence establishing that Plaintiffs consented to the incursion on their property, this Court may affirm a trial court's order on other grounds where affirmance is required for a reason different from that on which the

20

trial court based its decision. *Orange Stones Co.*, 87 A.3d at 1023; *Guy M. Cooper, Inc.*, 903 A.2d at 618 & n.9.

*Conclusion*

For the foregoing reasons, we conclude that the trial court correctly held that Plaintiffs' claims against the Authority were barred by immunity and that HRG was entitled to judgment as a matter of law on all of Plaintiffs' claims. Accordingly, the trial court's orders sustaining the Authority's preliminary objections and granting summary judgment in favor of HRG are affirmed.

_____
**JAMES GARDNER COLINS, Senior Judge**

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Grey Fox Plaza, Thomas Krouse,      :
Donna Krouse and Steven Krouse,      :
           Appellants      :
                       : No. 344 C.D. 2016
         v.      :
     :
Herbert, Rowland and Grubic, Inc.      :

## ORDER

AND NOW, this 30th day of January, 2017, the orders of January 21, 2014 and February 3, 2016 of the Lycoming County Court of Common Pleas sustaining the preliminary objections of the Lycoming County Water & Sewer Authority and granting the motion for summary judgment of Herbert, Rowland and Grubic, Inc. in the above captioned-matter are AFFIRMED.

_____
**JAMES GARDNER COLINS, Senior Judge**