## CITY OF PHILADELPHIA

v.

## URBAN MARKET DEVELOPMENT, INC., Appellant.

Commonwealth Court of Pennsylvania.

Argued May 14, 2012.

Decided June 22, 2012.

Lewis P. Hannah, III, Philadelphia, for appellant.

Eleanor N. Ewing, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Urban Market Development, Inc. (UMD) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) that directed the demolition of a building located at 5930 Walnut Street, Philadelphia, PA (Property). In February, 2010, the City of Philadelphia (City) brought an action seeking an injunction ordering repair to the Property that "presented a serious and immediate hazard to the safety, health and welfare of the public," or in the alternative, an order authorizing the City to demolish the Property.[1] (Civil Complaint, Reproduced Record (R.R.) at 6a–7a.) The action was brought against "Urban Market Development, Inc.," and not against the title owner, "Urban Market Developers, Inc." The complaint caption included the title owner's proper address, and the body of the complaint properly asserted the registered office address for service, at 4637 Spruce Street, Philadelphia, PA. Urban Market Developers, Inc. is a Pennsylvania corporation, and Napoleon Vaughn is its President.

In its order dated November 18, 2010, the trial court set forth its findings and conclusions of law, and directed the demolition of the Property.[2] (Trial Court Order, R.R. at 14a–16a.) The trial court found, *inter alia*, that during a hearing held on September 7, 2010, Mr. Vaughn, as President of UMD, was ordered to obtain, by the next scheduled hearing, an engineering report (Engineering Report) describing the structural condition of the Property. (*Id.* at ¶ 1, R.R. at 14a.) The trial court found that the Engineering Report was not produced at the subsequent hearing held on October 19, 2010, and at that hearing, Mr. Vaughn was again ordered to produce an Engineering Report no later than November 16, 2010. (*Id.* at ¶ 2, R.R. at 14a.) At the November 16, 2010 hearing, Mr. Vaughn again failed to produce the Engineering Report. (*Id.* at ¶ 3, R.R. at 14a.) The trial court found credible the testimony of an inspector from the Department of Licenses and Inspections (L & I) that, despite some remedial roofing work undertaken by Mr. Vaughn, the Property remained in an unsafe condition, presenting an imminent threat to the health, safety and welfare of the public. (*Id.* at ¶¶ 4–5, R.R. at 14a–15a.)

On December 16, 2010, Mr. Vaughn filed, *pro se*, a Notice of Appeal of the trial court's order. On January 31, 2011, the trial court ordered UMD to file a State-

---

1. The civil complaint alleged that the Department of Licenses and Inspections had inspected the Property pursuant to its authority under the Administrative Code of the City of Philadelphia (Subcode "A") of Title 4 of the Philadelphia Code of General Ordinances at A–401.2, and determined the Property to be in violation of Title 4 (The Building and Occupancy Code) of the Philadelphia Code, including but not limited to:

    PM (Property Maintenance)–307.1/10— Missing bricks (wall)

    PM (Property Maintenance)–307.1/19—Unsafe vacant building

    PM (Property Maintenance)–307.1/3—Roof collapsed.

    (Civil Complaint, ¶ 5, R.R. at 7a.)

2. No supersedeas was sought, and demolition of the Property began on December 8, 2010, prior to Mr. Vaughn's *pro se* appeal from the trial court's order. (Appellant's Motion to Deny Quash, R.R. at 66, Civil Docket Report, R.R. at 44a.)

ment of Errors Complained of on Appeal, and on February 14, 2011, Mr. Vaughn, *pro se,* filed his 1925(b) Statement. The City filed a motion to quash the appeal, arguing Vaughn had no standing. On June 7, 2011, this Court issued a *per curiam* order granting the City's motion to quash and dismissing Vaughn's appeal. On June 13, 2011, counsel entered his appearance on behalf of UMD. On June 17, 2011, Mr. Vaughn and UMD filed a Motion for Reconsideration, arguing that the appeal should be re-opened. On July 8, 2011, this Court granted the Motion for Reconsideration, and vacated the June, 7, 2011 order dismissing the appeal. On August 30, 2011, the Court, *sua sponte,* issued an order amending the caption to remove "Appeal of Napoleon Vaughn" from below the case name.

On appeal,[3] UMD argues, first, that its procedural due process rights as title owner of the Property were violated because the City mistakenly brought its action against "Urban Market Development, Inc.," instead of "Urban Market Developers, Inc.," thus allegedly failing to provide proper notice. "The fundamental components of procedural due process are notice and the opportunity to be heard." *In re McGlynn,* 974 A.2d 525, 531 (Pa. Cmwlth.2009). The key factor in determining whether procedural due process is denied is whether the party asserting the denial of due process suffered demonstrable prejudice. *Id.* at 532. Upon review of the transcripts from each of the three hearings held in this matter, and specifically the testimony of Mr. Vaughn, who participated fully at each hearing, and presented the testimony of his contractor, who identified himself as "contractor for Urban Market Developers,"[4] we cannot conclude that UMD suffered any lack of notice, or opportunity to be heard, or that it has established the type of demonstrable prejudice required to prove that its due process rights were violated.

Urban Market Developers, Inc. received notice of both the stated violations and the complaint in equity through its President, Napoleon Vaughn. The original violation notice was issued to "Urban Market Dev Inc.," designating the Property as "unsafe" within the meaning of Title 4 of the Philadelphia Building Construction and Occupancy Code, Subcode "PM"—The Philadelphia Property Maintenance Code (Philadelphia Code), Section PM–307.0 Unfit Structures and Equipment. (L & I Violation Notice, R.R. at 10a.) The caption and body of the complaint properly identified the corporation's registered office address for service. (Civil Complaint, R.R. at 6a.) Before the trial court, over the course of three hearings held over a three-month period, Mr. Vaughn never raised an issue of mistaken identity or lack of notice, never requested that the trial court substitute the proper party name, and vigorously defended the City's action on its merits. Further, this Court has held, pursuant to the doctrine of *idem sonans* (sounding the same or alike), that so long as "misspelling is adequate to identify the person whose name is in question and does not cause a litigant prejudice, the doctrine ... will be applied to uphold the validity of [the proceeding] that contains a misspelled name." *Aldhelm, Inc. v. Schuylkill County Tax Claim Bureau,* 879 A.2d 400, 404 (Pa.Cmwlth.), *ap-*

---

3. Our scope of review in an equity action is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence, whether an error of law has been made, or whether the trial court abused its discretion. *City of Erie v. Stelmack,* 780 A.2d 824, 827 n. 6 (Pa.Cmwlth.2001).

4. Notes of Testimony, October 19, 2010, Supplemental Reproduced Record, at 40b.

*peal denied,* 586 Pa. 729, 890 A.2d 1060 (2005). In *Aldhelm, Inc.,* a case involving notices of a tax delinquency and the sale of real property, the spelling of a record owner's name as "Aldheim, Inc." instead of "Aldhelm, Inc." was held not to prejudice the taxpayer, a corporation that received actual notice of the sale through its president.

■ UMD also argues that the trial court erred in deeming the Property an "imminently dangerous structure," and incorrectly applying Section PM–308.0 (Imminently Dangerous Structures) of the Philadelphia Code when it ordered the demolition. UMD contends that in its violation notices and code enforcement complaint, the City only alleged that the Property was in violation of Philadelphia Code Section PM–307.0 (Unsafe and Unfit Structures and Equipment), and that pursuant to Philadelphia Code Sections PM–308.1 and PM–308.2, the City was required to provide notice that the Property was in imminent danger of failure or collapse, and to specify the repair required

to render the structure safe, and failed to do either.[5]

We find no error in the trial court's determination. The violation notice provided to UMD by L & I specified that the floor/ceiling assembly, a wall, and the roof of the Property were all deteriorated and in danger of collapse, and clearly indicated that the structure had therefore been designated unsafe in accordance with Section PM–307 of the Philadelphia Code. (L & I Violation Notice, R.R. at 10a–13a.) The notice instructed UMD to make the repairs or demolish the structure in whole or in part, and advised that if UMD failed to comply, the City could eliminate the unsafe condition by demolition. (*Id.,* R.R. at 12a–13a.)

The trial court found credible the testimony of the L & I Inspector that the Property was in an unsafe condition, and concluded that UMD had proven incapable of restoring the Property to "an acceptable condition with the expedience necessary to protect the public." (Trial Court Order at ¶¶ 5–6, R.R. at 15a.) Under Philadelphia Code Sections PM–307.1 and PM–307.6,

5. **Philadelphia Code Section PM–307.0 Unsafe and Unfit Structures and Equipment** states: **PM–307.1 Unsafe Structures:** All structures that are or hereafter shall become unsafe, unsanitary or deficient because of inadequate means of egress facilities, or which constitute a fire hazard, or are otherwise dangerous to human life or the public welfare ... shall be deemed unsafe. All unsafe structures shall be taken down and removed or made safe and secure as the code official deems necessary and as provided for in this Section ...

. . .

**PM–307.6 Disregard of notice:** Where the order to eliminate an unsafe condition is not obeyed, the Department, in addition to invoking any other sanction or procedure, is authorized to eliminate the unsafe condition or contract with other persons for repair or demolition ...

**Philadelphia Code Section PM–308.0 Imminently Dangerous Structures** states:

**PM–308.1 Conditions:** When, in the opinion of the code official, there is imminent danger of failure or collapse of a structure of any part thereof which endangers life ... the code official is hereby authorized and empowered to order and require the occupants to vacate the same forthwith ...
**PM–308.2 Notice:** If an imminently dangerous condition is found, the code official shall serve on the owner, manager, managing agent or person in control of the structure a written notice describing the imminent danger and specifying the required repair to render the structure safe, or requiring the imminently structure or portion thereof to be demolished within a stipulated time. Such notice shall require the person thus notified to declare immediately to the code official acceptance of rejection of the terms of an order to demolish.

where an order by L & I to eliminate an unsafe condition is not obeyed, demolition of a structure is expressly authorized. The trial court was not required to find that the Property was in an imminently dangerous condition, but did so, based upon the credible testimony of the L & I inspector. We find no error or abuse of discretion in the trial court's order to demolish the Property.

UMD argues, finally, that the record is devoid of any objectively supported evidence explicitly delineating the threat posed by the Property to the health, welfare and safety of the public. However, the record, established over the course of three hearings, amply supports the findings of the trial court. At the October 19, 2010 hearing, the L & I inspector testified that in July, 2009, he met with Mr. Vaughn and his contractor at the Property, and advised them that based upon his examination, roof rafters had been fitted incorrectly and not in accordance with code-approved construction. (Hearing Transcript, October 19, 2010, Supplemental Reproduced Record (S.R.R.) at 48b–49b.) The L & I inspector testified that he told Mr. Vaughn that he would have to obtain the services of an engineer, and provide a "comprehensive, detailed, sealed Engineer's Report" setting forth the sequences of steps necessary to make the property safe. (*Id.,* S.R.R. at 55b, 58b.) The trial court granted UMD "one last" thirty-day continuance to obtain the Engineer's Report and building permits, and stated unequivocally that failure to obtain these documents would result in a demolition order. (*Id.,* S.R.R. at 59b.)

At the November 18, 2010 hearing, the L & I inspector testified that he had again inspected the Property on the previous day, and no work had been done on the Property since his previous inspection, there was no interior floor system, the roof

was compromised, and the Property was in extremely dangerous condition and represented a significant danger to the public. (Hearing Transcript, November 18, 2010, R.R. at 22a–23a.) The trial court found the testimony of the L & I inspector to be credible. As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence. *Parkview Court Associates v. Delaware County Board of Assessment Appeals,* 959 A.2d 515 (Pa.Cmwlth.2008). Accordingly, the order of the trial court is AFFIRMED.

### *ORDER*

AND NOW, this 22nd day of June, 2012, the November 18, 2010 order of the Philadelphia County Court of Common Pleas is AFFIRMED.