# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia, : 
     Appellant : 
         : 
   v.       :   No. 2626 C.D. 2015
         :   Argued: October 20, 2016
Gryphin Coatings, Inc. : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE BROBSON       FILED: April 18, 2017

    The City of Philadelphia (the City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), authorizing the judicial sale of real property located in Philadelphia, Pennsylvania, for delinquent real estate tax liens and municipal liens held by the City. The order denied the City's petition for entry of a decree extinguishing an *in rem* mortgage foreclosure judgment previously entered by the trial court. The order also set the amount of the decree at $325,222.03. For the reasons that follow, we reverse the order of the trial court and remand for further proceedings.

## I.   BACKGROUND

    The background to this case is somewhat convoluted. This action arises from a tax foreclosure petition filed by the City against Gryphin Coatings,

Inc. (Gryphin) pursuant to what is commonly known as the Municipal Claims and Tax Liens Act (MCTLA).[1]

## A. Parties

The property at issue is a large industrial paint and varnish factory located at 3501-49 Richmond Street, Port Richmond, Philadelphia, Pennsylvania (the Property). Gryphin, the prior owner of the Property, defaulted on a loan issued by First Union Bank and secured by a mortgage on the Property. First Union assigned the mortgage note to National Loan Investors (NLI), which obtained an *in rem* judgment[2] against the Property on February 21, 2007. In June 2007, NLI assigned the judgment to Acorn Fund, LLC (Acorn). Acorn petitioned the trial court to sell the property at a judicial sale. During the pendency of this appeal, Acorn assigned the judgment and all derivative rights to 5627-47 Hegerman Street, LLC (Hegerman). On July 12, 2016, this Court granted Acorn's and Hegerman's joint motion to substitute Hegerman as the proper party to this action.

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505.

[2] The trial court and the parties refer to the judgment in mortgage foreclosure as an *in rem* judgment; however, this designation is not precisely correct. "Although a mortgage foreclosure action is often referred to as an action *in rem*, this designation is not strictly accurate; rather, a foreclosure action does not determine title to property, and might more correctly be described as '*de terris*.'" Action of Mortgage Foreclosure, Rule 1141. Definition: Conformity to Civil Action, 4 Goodrich Amram 2d § 1141:1 (2017). For consistency, however, we shall refer to the judgment herein as an *in rem* judgment.

## B. Factual Background

### 1. *The City's First Code Enforcement Action*

On June 16, 2006, the City of Philadelphia Department of Licenses and Inspections (L&I) issued a cease operations order against Gryphin and the Property for failure to correct several violations of the Philadelphia Fire Code (Fire Code). On July 21, 2006, the City filed an enforcement action (First Code Enforcement Action) in the trial court. The trial court held several hearings over the following four months, at which the City sought injunctions directing Gryphin to correct the Fire Code violations and Gryphin requested that the trial court lift the cease operations order. On November 6, 2006, the trial court ordered that, in order to generate revenue to correct the Fire Code violations, Gryphin would be allowed to manufacture a limited amount of paint in order to fulfil existing purchase orders, but it could do so only in a limited area of the Property, and with several other restrictions. After several additional hearings between November 16, 2006, and March 14, 2007, the trial court issued an order dated March 15, 2007, directing Gryphin to correct all outstanding Fire Code violations and comply with any variances by August 15, 2007. After a hearing held on August 15, 2007, the trial court found that Gryphin had failed to comply with the March 15, 2007 order. On August 15, 2007, the trial court ordered that all operations at the Property cease and desist and the Property be vacated. The August 15, 2007 order also directed that the costs to the City for the First Code Enforcement Action shall be entered as a lien in the amount of $10,000 against Gryphin in favor of the City and shall be payable on the date of a judicial sale, presumably referring to a pending judicial sale.

3

## 2. *The City's Second Code Enforcement Action*

On August 30, 2011, the City initiated a second enforcement action (Second Code Enforcement Action) against Gryphin. The Second Code Enforcement Action sought to compel Gryphin to correct Fire Code and Property Maintenance Code violations on the Property or, in the alternative, to demolish the buildings situated on the Property. Following a hearing on November 3, 2011, the trial court concluded that the buildings on the Property were "unsafe and pose[d] a danger to human life and the public welfare" and, accordingly, authorized the City to demolish the Property and enter the costs associated with the demolition as a lien on the Property. (R.R. at 218.) Acorn filed a motion to stay the demolition, which the trial court denied by order dated December 14, 2011. The City demolished the buildings and incurred costs of approximately $295,000, which were entered as liens against the Property (demolition liens).

## 3. *Mortgage Foreclosure Action*

During the time period relevant to the First Code Enforcement Action, NLI engaged in foreclosure proceedings relative to the Property. On September 25, 2006, NLI filed a complaint in mortgage foreclosure.[3] On February 21, 2007, a default judgment was entered in the amount of $471,611.47 in favor of NLI against the Property for failure to answer the complaint. On June 4, 2007, NLI assigned that judgment to Acorn. Gryphin filed an emergency motion to postpone the judicial sale scheduled for June 5, 2007. On

---

[3] We glean the facts relating to the mortgage foreclosure action from the November 4, 2008 opinion issued by the Honorable G.F. DiVito of the trial court. (Reproduced Record (R.R.) at 274a-276a.)

4

September 28, 2007, the trial court granted a joint motion by the parties to postpone the sale again until November 13, 2007.

On August 23, 2007, Acorn filed an emergency motion to have Gryphin removed from the Property and to allow it to enter to remedy the hazardous conditions on the Property. The trial court, on August 24, 2007, ordered that Gryphin cease all operations in accordance with the August 15, 2007 order and further instructed Gryphin to allow Acorn access to the Property. On October 28, 2007, the trial court granted Acorn's motion to reassess damages, increasing the amount of the judgment to $504,844.07 plus interest.

On November 16, 2007, Acorn filed a motion for contempt, alleging that Gryphin had failed to comply with the trial court's August 24, 2007 order. On December 18, 2007, after a hearing on Acorn's motion for contempt, the trial court ordered that all operations on the Property cease and that neither party would be allowed entry. On that same date, the trial court appointed a master to evaluate the Property and issue a report. By order dated January 23, 2008, and docketed on January 30, 2008 (January 30, 2008 order), the trial court, considering the master's report and recommendation, reasserted that neither party should enter the Property and authorized the City to enter the Property to bring it up to code and to place a lien against the Property for the cost of doing so. The City immediately took action to remedy hazardous conditions on the Property. The City's costs were reduced to liens of approximately $313,000 against the Property (hazard removal liens).

*4. Appeal of the January 30, 2008 Contempt Order*

On February 29, 2008, Gryphin appealed the January 30, 2008 order of the trial court to the Superior Court. The appeal of the contempt order was

5

consolidated with a pending appeal of the trial court's order, dated October 30, 2007, reassessing damages on the mortgage foreclosure judgment. By opinion and order dated August 6, 2009, the Superior Court affirmed the trial court's October 30, 2007 order reassessing damages but vacated the trial court's January 30, 2008 order granting Acorn's motion for contempt.[4] The Superior Court held that the contempt proceeding fell short of due process, noting that, at the hearing on the motion for contempt, Gryphin had not been allowed to introduce testimony rebutting Acorn's arguments and that the hearing had been cut short before the parties could fully develop their arguments. Accordingly, the Superior Court vacated the trial court's January 30, 2008 order and remanded the matter to the trial court for a further hearing on the motion for contempt. There is no evidence in the record that a further contempt proceeding was held.[5]

### 5. *The City's Foreclosure Action Pursuant to the MCTLA*

On March 3, 2015, the City filed the instant tax foreclosure petition against Gryphin pursuant to the MCTLA. The petition sought to sell the Property at a judicial sale to satisfy outstanding real estate tax liens, hazard removal liens, and demolition liens. Gryphin had initially challenged the hazard removal bills by filing petitions for review with the Philadelphia Tax Review Board (Tax Review

---

[4] In its opinion, the Superior Court noted that the trial court issued its December 18, 2007 order in consideration of Acorn's motion for contempt, but the order did not expressly hold Gryphin in contempt. For purposes of the appeal of the January 30, 2008 order, the Superior Court construed the December 18, 2007 order as finding that Gryphin was in contempt, noting that the portion of the order barring Acorn from the Property and appointing a master exceeded the scope of a civil contempt order.

[5] On March 22, 2012, the trial court granted Acorn's subsequent motion to reassess damages for the mortgage foreclosure action in the amount of $649,816.97, reflecting accrued interest. (R.R. 7a.)

6

Board). The Tax Review Board, however, dismissed Gryphin's appeals on September 24, 2013, for failure to prosecute. The trial court held two hearings on May 7, 2015, and September 29, 2015, where the City introduced evidence supporting the real estate tax liens (approximately $34,000), the hazard removal liens (approximately $313,000), and the demolition liens (approximately $295,000). (R.R. 185a-193a.) Acorn did not contest the real estate liens, but it did contest the validity of the hazard removal liens and the demolition liens, arguing that the Superior Court had invalidated the trial court's January 30, 2008 order authorizing the City to remove the hazardous condition and, thus, incur the costs associated with the liens.

On November 25, 2015, the trial court entered an order, granting the City's request to sell the Property at judicial sale. Additionally, the November 25, 2015 order held that the *in rem* mortgage foreclosure judgment against the Property would not be extinguished by the judicial sale, and that the hazard removal lien was invalid because the Superior Court vacated the trial court's January 30, 2008 order. Accordingly, the trial court limited the decree to $325,222.03, excluding the invalidated hazard removal liens, real estate tax liens, and other municipal liens. The trial court did not provide specific reasoning in its opinion for the exclusion of the real estate tax liens and other municipal liens. The trial court's November 25, 2015 order is the subject of the instant appeal.

## II. DISCUSSION

### A. Issues on Appeal

7

The City originally raised three issues on appeal to this Court:[6] (1) whether the trial court erred in holding that the *in rem* mortgage foreclosure judgment cannot be extinguished upon judicial sale under the MCTLA; (2) whether the trial court improperly invalidated the hazard removal lien, or, in the alternative, whether the City had authority to remove the hazardous conditions on the Property independent of the trial court's January 30, 2008 order; and (3) whether the trial court erred in limiting the judicial sale decree to a specific monetary value or, alternatively, improperly quantifying the value.

On October 17, 2016, the City submitted to the Court a status update, indicating that the Property was sold to Hegerman at a mortgage foreclosure auction on October 4, 2016. The City indicated that:

> If and when the mortgage foreclosure sale is complete and title is formally conveyed to Hegerman, the disputed *in rem* mortgage foreclosure judgment will automatically be discharged. At that time, the [C]ity's first issue on appeal—whether the trial court erred in excluding the *in rem* mortgage foreclosure judgment from extinguishment upon sheriff's tax sale—will be mooted.

(Appellant City of Philadelphia's Status Update to the Court, at 2.) On December 16, 2016, the parties filed a second joint status report, informing the Court that the mortgage foreclosure sale was complete and, thus, the first issue of whether the trial court erred in excluding the *in rem* mortgage foreclosure

---

[6] Our review of an appeal taken from a trial court's order in a tax foreclosure matter is limited to determining whether the trial court committed an error of law, rendered a decision not supported by substantial evidence, or abused its discretion. *City of Philadelphia v. Robinson*, 123 A.3d 791, 794 n.2 (Pa. Cmwlth. 2015). If a question of law is presented, our standard of review is *de novo* and our scope of review is plenary. *Pocono Manor Investors, LP v. Pa. Gaming Control Bd.*, 927 A.2d 209, 216 (Pa. 2007).

judgment from extinguishment upon sheriff's tax sale became moot. Because the parties now agree that this issue is moot, we do not address it on appeal.[7]

## B. Analysis

### 1. Validity of the Hazard Removal Lien

The City argues that the trial court improperly invalidated the hazard removal liens because Acorn failed to appeal timely the liens to the Tax Review Board (Board) and, thus, could not contest the liens in the tax foreclosure action before the trial court. Hegerman does not contest that Acorn failed to appeal properly the liens to the Board. Instead, Hegerman argues that the trial court held that the City presented insufficient evidence to support its claim that it was entitled to recover the outstanding hazard removal liens. Hegerman further argues that we should not disturb the trial court's evidentiary finding absent an abuse of discretion.

In its opinion, the trial court stated:

> The City's [t]ax [p]etition is vague upon the facts and
> law upon which it intends to seek a [d]ecree, as the only

_____

[7] In the December 16, 2016 joint status report, the parties additionally informed the Court that Hegerman likely intended to file exceptions to the proposed distribution of the proceeds from the mortgage foreclosure sale. On December 20, 2016, we ordered the parties to file an additional joint status report with the Court, including whether exceptions were filed and whether any additional issues were rendered moot. On March 20, 2017, Hegerman and the City filed separate status reports, noting that Hegerman had filed exceptions to the proposed distribution of the proceeds from the mortgage foreclosure sale and that it had filed a separate action in the trial court contesting additional water charges and liens assessed after the buildings were demolished. Both the exceptions and the action challenging the additional water charges and liens are pending before the trial court. In the March 20, 2017 status reports, both parties indicated that they could not agree that the issue of whether the trial court erred in limiting the judicial sale decree or improperly quantifying the value of the decree has been rendered moot. Because we do not conclude that this issue has been rendered moot, we will address it below.

9

specific factual averments are by way of lien amounts appended as exhibits, with reference to Sections [1 and 6] of the [MCTLA, 53 P.S. §§ 7101, 7106]. Section [6 of the MCTLA] specifically sets forth that the assessments and claims at issue must be 'lawfully imposed' and 'lawfully assessed' against the [P]roperty. Therefore, it logically follows that the City must prove that its stated assessments are lawful. Here, [the trial court] determined that the amounts sought from the vacated [January 30, 2008 order] were not lawfully imposed or assessed and, thus, could not properly be part of the [t]ax [p]etition.

(R.R. at 8a.) While the trial court did note that the petition is "vague upon the facts," its holding is founded on the determination that the liens were not "lawfully imposed or assessed" and, therefore, are not recoverable under the MCTLA. Thus, the appeal of this issue raises a question of law, our review of which is plenary. *Pocono Manor Investors*, 927 A.2d at 216.

Hegerman argues that, because the Superior Court invalidated the trial court's January 30, 2008 order, the City had no authority to remove the hazardous condition and, consequently, place a lien on the Property for the cost of the removal. Regardless of whether the trial court's order authorizing the City to proceed with the removal was later invalidated, it is uncontested that the City actually performed the work and assessed a lien against the Property for its cost.[8]

---

[8] In the alternative, the City argues that it had independent authority to abate the hazardous condition on the Property and thereafter collect the cost for doing so via lien on the Property. The City argues that its inherent police powers allow it to enact ordinances for the health, safety, and welfare of its citizens, and to abate unsafe conditions when those ordinances are not followed. *See City of Philadelphia v. Urban Market Dev., Inc.*, 48 A.3d 520, 523 (Pa. Cmwlth. 2012). The City further argues that the MCTLA authorized it to enter a lien on the Property for the cost of abating a nuisance or hazard. *See* Section 4 of the MCTLA, *as amended*, 53 P.S. § 7107. Hegerman does not argue on appeal that the City does not have the authority to abate a nuisance and enter a lien for costs incurred in doing so. We need not, **(Footnote continued on next page…)**

It is also uncontested that Gryphin had the opportunity to raise the issue of the order's validity before the Board or via writ of *scire facias*, yet failed to do so. Accordingly, the lien imposed by the City was legally valid when the City filed its tax petition.

We have previously held that the MCTLA provides a specific method of challenging the entry of a municipal lien. "Where, as here, the legislature provides for a specific, detailed and exclusive method for the disposition of a particular dispute, a party seeking relief must adhere to such statutory method." *North Coventry Twp. v. Tripodi*, 64 A.3d 1128, 1133 (Pa. Cmwlth. 2013). Although the assessment and imposition of the lien occur without any form of hearing, a property owner may challenge the municipal lien after the lien is recorded. *City of Philadelphia v. Perfetti*, 119 A.3d 396, 399 (Pa. Cmwlth. 2015), *appeal denied*, 131 A.3d 493 (Pa. 2016). The MCTLA provides no mechanism for a direct appeal from entry of a municipal lien. Instead, a party challenging a municipal claim must do so through a *scire facias* proceeding and cannot seek to strike the municipal lien on appeal. Section 16 of the MCTLA, 53 P.S. § 7184; *North Coventry Twp.*, 64 A.3d at 1133.

There is no indication in the record that Gryphin or Acorn ever attempted to initiate a *scire facias* action to contest the validity of the lien. We note that Gryphin initially attempted to challenge the lien before the Board pursuant to Section 1702(1) of the Philadelphia Code, Phila. Code § 19-1702(1),

---

**(continued…)**

however, decide here if the City rightfully exercised this authority in removing the hazardous condition from the Property.

11

which provides that a petitioner may challenge "any decision or determination relating to the liability of any person for any unpaid money or claim collectible by the Department of Revenue" and that such a petition "shall be filed with the [Board] within 60 days after the mailing of a notice of such decision or determination to the petitioner." Gryphin challenged the hazard removal liens by filing petitions for review with the Board. Gryphin apparently abandoned the appeals, however, and the Board dismissed the petitions on September 24, 2013, for failure to prosecute. Thus, Acorn was precluded from challenging the validity of the lien before the trial court. *See Krug v. City of Philadelphia*, 620 A.2d 46, 48 (Pa. Cmwlth. 1993) (holding that taxpayer waived defenses to city's collection action by failing to appeal to Board). Accordingly, the trial court erred in holding that the hazard removal liens were invalid.

### 2. *Limitation and Calculation of the Monetary Value of the Decree*

The City next argues that the trial court improperly limited the City's decree to a specific monetary value and that, by doing so, the trial court erroneously extinguished the City's real estate tax liens, its water service liens, and interest, penalties, fees, and costs, which may accrue during the pendency of the judicial sale. The City also argues that, even if the trial court intended that only the demolition liens should be included in the decree, the trial court improperly calculated the amount of the outstanding liens. The trial court does not cite any authority in its opinion for limiting the monetary value of the decree, and Hegerman does not address the issue on appeal.

In its November 24, 2015 order, the trial court ordered "[t]he request for the entry of a [d]ecree authorizing the judicial sale of [the Property] for delinquent real estate taxes is GRANTED. . . Further, [the trial court] has

12

determined that the amount of the [d]ecree shall be $325,222.03 ($608,206.26 less $282,984.23)." (R.R. at 1a.) Although the trial court explained that its calculation of the amount of the decree excluded the costs associated with the January 30, 2008 order, which was invalidated by the Superior Court,[9] it does not explain how it arrived at the remaining amount. The City asserts that the amount owing on the 2008 hazard removal liens total $312,665.91. (R.R. 186a-187a.) Thus, it is unclear how the trial court calculated the total amount of the decree.

Regardless of the trial court's calculation of the amount owing, the MCTLA does not provide for such a limitation on the amount of a decree. To the contrary, Section 3(a)(1) of the MCTLA, 53 P.S. § 7106(a)(1), provides that all "charges, expenses and fees[10] incurred in the collection of any delinquent account" shall be recoverable from the proceeds of the judicial sale. The trial court's order does not allow for any charges, expenses, or fees that may be incurred in collecting the outstanding amounts due, and limiting the amount of the decree only to the amount owing on the lien contradicts the express language of the MCTLA. Further, Hegerman has cited no authority and has raised no argument for the proposition that a trial court may limit the monetary value of a decree under the

---

[9] The trial court explained in a footnote to its November 24, 2015 order: "the City was without proper authority to incur the costs associated with [the January 30, 2008 o]rder given that it was filed in Acorn's foreclosure action rather than a separate enforcement, and the Superior Court vacated [the January 30, 2008 o]rder. The amount of the liens associated with [January 30, 2008 o]rder were submitted as $282,984.23."

[10] The MCTLA defines charges, expenses, and fees to "include all sums paid or incurred by a municipality to file, preserve and collect unpaid taxes, tax claims, tax liens, municipal claims and municipal liens, including, but not limited to, prothonotary and sheriff fees, postage expenses, and title search expenses." Section 1 of the MCTLA, 53 P.S. § 7101.

MCTLA. Accordingly, to the extent the trial court placed an absolute limit on the monetary value of the decree, we conclude that it erred.

It is unclear whether the trial court intended to limit expressly the total amount of the decree or was simply noting that the City was only entitled to recover the amount owing for the demolition lien. Even if the trial court intended only to signify that it was limiting the decree to the demolition lien, the City argues that the trial court failed to address its outstanding real estate tax and water services tax liens. We note that the amount stated in the trial court's order does not include those liens, and, further, the trial court's opinion cites no reasoning for their exclusion.[11] We will, therefore, remand to the trial court to consider whether the City is entitled to collect any outstanding real estate tax, water services tax liens, or other outstanding amounts.

## III. CONCLUSION

For the reasons set forth above, we hold that the trial court erred in invalidating the hazard removal liens and limiting the decree to the monetary amount owing under only the demolition lien. We remand the matter to the trial

---

[11] In its March 20, 2017 status report, Hegerman asserts that the issue of whether the trial court erred in limiting the judicial sale decree or improperly quantifying the value of the decree has been rendered moot. Hegerman suggests that the issue is moot because it did not file exceptions to the real estate tax lien in the later mortgage foreclosure sale, and it is currently challenging the water liens in a separate action before the trial court. Because it is unclear to the Court whether Hegerman's pending matter in the trial court encompasses the liens at issue in the instant matter, we remand to the trial court to consider whether the City may recover outstanding amounts from the proceeds of the judicial sale. As noted by the City in its March 20, 2017 status report, it would not be entitled to collect specific liens under distributions from *both* the judicial sale and the mortgage foreclosure sale. (Appellant City of Philadelphia's Status Update to the Court, at 3 n.2.)

14

court to consider whether the City is entitled to recover any other outstanding amounts from the proceeds of a judicial sale.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,            :
              Appellant      :
                        :
         v.             :     No. 2626 C.D. 2015
                        :
Gryphin Coatings, Inc.        :

# **O R D E R**

AND NOW, this 18th day of April, 2017, the order of the Court of Common Pleas of Philadelphia County (trial court) is hereby REVERSED. The case is REMANDED to the trial court for further proceedings in accordance with this opinion.

Jurisdiction relinquished.

 

 

_____
P. KEVIN BROBSON, Judge